MATHILDE VON ELLERT SISTARE *vs.* HORACE RANDALL
SISTARE.

Second Judicial District, Norwich, April Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and RORABACK, Js.

An order or decree of a court of another State requiring a husband to
pay his wife a stated weekly sum for her separate maintenance
and support, which is subject to modification or annulment at
any time by the court which passed it, and is enforcible in that
State only by proceedings in sequestration or for contempt, is not
a final and ·conclusive judgment which the courts of this State
are bound to enforce under the "full faith and credit" clause of
the Federal Constitution (Art. 4, § 1); nor should such a decree be
enforced here as an act of comity, through the medium of a suit
in the nature of debt on judgment, since this would not only
interfere with the discretionary control reserved to the court
which passed the decree, but would give to it a greater effect than
that which it could receive in the jurisdiction of its origin.
The case of *Barber* v. *Barber*, 21 How. (U. S.) 582, distinguished.

Argued April 30th—decided June 5th, 1907.

ACTION to recover upon a New York decree granting
periodical payments for future maintenance, brought to
the Superior Court in New London County where a de-
murrer to the complaint was overruled (*Shumway, J.*), and
the cause was afterward tried to the court, *Thayer, J.;*
facts found and judgment rendered for the plaintiff to re-
cover $5,805, and appeal by the defendant. *Error, judg-
ment set aside, and judgment for defendant ordered.*

In 1899 the plaintiff was by the courts of New York granted a separation from the defendant, her husband, and awarded the custody of their minor son. By the judgment it was further ordered, adjudged and decreed that the defendant, from and after the entry thereof, should pay to the plaintiff, for her maintenance and support and the maintenance and education of said son, the sum of $22.50 per week, to be paid into the hands of the plaintiff's attorneys of record, on each and every Monday. It was further ordered, adjudged and decreed that the plaintiff have leave to apply, from time to time, for such orders at the foot of the judgment as might be necessary for its enforcement and for the protection and enforcement of her rights in the premises.

Section 1771 of the New York Code of Civil Procedure, then in force and under which this order for payments to the wife for her benefit and that of her son was made, provided that in actions for a separation the court might, either in the final judgment, or by orders made from time to time before such judgment, give such directions, as justice required between the parties, for the custody, care, education and maintenance of any of the children of the marriage, and, where the action should be brought by the wife, for her support. It was further provided that the court might, upon the application of either party, after due notice to the other, by order, annul, vary or modify such directions. The right of the defendant to make such an application was conditioned upon leave of the court to make it having been first obtained. Section 1772 provided that the court might require the husband to give security for the payments which he might be directed to make as aforesaid, and that in case of a failure on his part to make payments, or give security, as directed, his personal property and the rents and profits of his real property might be sequestered, a receiver thereof appointed, and the property thus sequestered applied under the direction of the court to the satisfaction of the payments ordered, as justice should require. Section 1773 further provided that where

a husband was in default of his payments and it appeared presumptively that the proceedings specified in § 1772 would be ineffectual, the court might in its discretion institute proceedings against him for his punishment for contempt.

The defendant made none of the payments required of him by said order and decree, and this suit was brought to recover the amount in arrears, which at the commencement of the action was $5,805. Judgment for that sum was rendered.

The complaint recited the issuance of the order and its terms in full, that it still remained in full force and effect, and that payments had not been made as ordered to the amount of $8,500, and prayed for judgment for $10,000 damages. The defendant demurred, for the reasons that the so-called judgment or decree sought to be enforced was not one for the present payment of a definite sum of money and therefore could not be enforced in this State; that it did not create a debt or obligation which was enforcible in an action of the character of the present, but only by the court which issued it; and that it was not such a judgment as was entitled to full faith and credit in this State and enforcible by action here. This demurrer was overruled, whereupon the defendant answered over. Upon the trial the same questions which were presented upon the demurrer were again presented. The trial court, however, accepted the rulings upon the demurrer as the law of the case, and upon the facts found rendered judgment as stated.

*Walter C. Noyes*, for the appellant (defendant).

*Benjamin Slade*, for the appellee (plaintiff).

PRENTICE, J. The nature, operation and effect, within the State of New York, of orders like that in question, directing payments *in futuro* to a wife by a husband living in judicial separation, and passed in 1899 pursuant to

the then provisions of statute, have been well settled by the repeated decisions of the courts of that jurisdiction. They have been declared to be tentative provisions which remain at all times within the control of the court issuing them and subject at any time to modification or annulment. *Tonjes* v. *Tonjes*, 14 App. Div. (N. Y.) 542, 43 N. Y. Supp. 941. The right of modification or annulment which is thus reserved to the court is one which extends to overdue and unsatisfied payments as well as to those which may accrue in the future. *Sibley* v. *Sibley*, 66 App. Div. (N. Y.) 552, 73 N. Y. Supp. 1147; *Goodsell* v. *Goodsell*, 94 App. Div. (N. Y.) 443, 88 N. Y. Supp. 161; *Kiralfy* v. *Kiralfy*, 36 Misc. (N. Y.) 407, 73 N. Y. Supp. 708; *Wetmore* v. *Wetmore*, 34 Misc. (N. Y.) 640, 70 N. Y. Supp. 604. The amount awarded " does not exist as a debt in favor of the wife against the husband in the sense of indebtedness as generally understood." *Tonjes* v. *Tonjes*, 14 App. Div. (N. Y.) 542, 544, 43 N. Y. Supp. 941. The order is not one " which simply directs the payment of a sum of money," and not such an one as can have enforcement by execution. *Weber* v. *Weber*, 93 App. Div. (N. Y.) 149, 152, 87 N. Y. Supp. 519. The special remedies provided in §§ 1772 and 1773 for the enforcement of the orders are exclusive. *Weber* v. *Weber, supra ; Branth* v. *Branth*, 20 Civ. Pro. (N. Y.) 33, 13 N. Y. Supp. 360. No judgment in another court can be entered upon them. *Branth* v. *Branth, supra.*

Such being the character of the order before us, as declared by the courts of the jurisdiction from which it comes, the conclusion would seem inevitable, not only that the courts of this State are under no constitutional obligation to give effect to it in the manner here sought, but ought not, as an act of comity, to do so, since it would thus be given a greater effect than would be given to it in the jurisdiction of its origin. *M'Elmoyle* v. *Cohen*, 13 Pet. (U. S.) 312, 326 ; *Mills* v. *Duryee*, 7 Cranch (U. S.) 481 ; *Bank of North America* v. *Wheeler*, 28 Conn. 433, 439.

But we are not left without authoritative declarations as

to the extra-territorial value of this New York decree. A Mrs. Lynde was by the Court of Chancery of New Jersey granted a separation from her husband, and it was adjudged that she was entitled to recover $7,840 as alimony then due and payable, and that her husband pay to her permanent alimony at the rate of $80 a week from the date of the decree. The statutes of New Jersey contained no express reservation of power to the court to modify or annul allowances of alimony so made, but the courts had said that they exhibited the intention that the subject should be continuously dealt with according to the varying conditions and circumstances. General Statutes of New Jersey (Vol. 2), p. 1269 et seq.; Lynde v. Lynde, 54 N. J. Eq. 473, 476, 35 Atl. 641. As to the methods of enforcing such decrees the New Jersey statutes contained substantially the same provisions for security, sequestration and receivership proceedings as were embodied in the New York code when the order in the present case was made, as recited in the statement of facts. It thus appears that the provision for the payment of future alimony to Mrs. Lynde in New Jersey was affected by no condition which did not equally affect that to Mrs. Sistare in New York. There was the same reserved power of modification, only the more clearly and emphatically expressed, and the same provision of special remedies, which the New York courts had gone so far as to declare to be exclusive. Mr. Lynde having failed to make any of the payments required of him, Mrs. Lynde brought suit against him in the courts of New York for the recovery of both the $7,840 and the amount of the accrued weekly payments. The appellate courts of that State, whose decisions have special interest as embodying the views prevailing in the jurisdiction from which the order before us comes, and the Supreme Court of the United States, to which the case was finally taken upon the Federal question involved, concurred in holding that the award of $7,840 created a debt of record to which full faith and credit should be given in the courts of a sister State, and that the order for future payments did not

create such a debt and did not constitute such a judgment or judicial proceeding as was within the purview of § 1, Article Fourth, of the Constitution of the United States. *Lynde* v. *Lynde*, 41 App. Div. (N. Y.) 280, 58 N. Y. Supp. 567, 162 N. Y. 405, 56 N. E. 979, 181 U. S. 183, 187, 21 Sup. Ct. Rep. 555. The conclusion thus reached is succinctly stated, and the reasons therefor sufficiently indicated in the language of the opinion of the Federal court, as follows : " The decree for the payment of $7,840 was for a fixed sum already due, and the judgment of the court below was properly restricted to that. The provision for the payment of alimony in the future was subject to the discretion of the Court of Chancery of New Jersey, which might at any time alter it, and was not a final judgment for a fixed sum."

In respect to any claim which might be made, that although the courts of this State are under no obligation to enforce the present New York decree they should as an act of comity do so, the opinions in the cases referred to suggest a sufficient answer to it when they note the inconclusive character of a decree which remains subject to change in the discretion of the court rendering it, and further invoke the elemental principle that collateral remedies provided in one State for the enforcement of its decrees cannot be carried over into another jurisdiction and there utilized. " The provisions for bond, sequestration, receiver and injunction, being in the nature of execution, and not of judgment, could have no extra-territorial operation ; but the action of the courts of New York in these respects depended on local statutes and practice of the State." *Lynde* v. *Lynde*, 181 U. S. 183, 187, 21 Sup. Ct. Rep. 555. Our courts are now asked to render a money judgment for the accrued payments as upon a debt of record, and to enforce that judgment by execution. To do so involves not only disregarding the discretionary control reserved to the New York court in respect to both past and future payments, but also giving effect by judgment and execution to a decree which could not,

as we have seen, be made the foundation of such a judgment in New York or enforced by execution there.

But it is said that the case of *Barber* v. *Barber*, 21 How. (U. S.) 582, lays down a doctrine contrary to that expressed in *Lynde* v. *Lynde*, that this earlier case was not overruled in the later, and that therefore it is to be reckoned with before any statement of the Federal doctrine can be confidently made. A careful examination of the two cases referred to will disclose that neither holds all that is frequently attributed to it, and that when rightly interpreted there is no lack of harmony between them. The *Barber* case grew out of an allowance of future alimony made to Mrs. Barber by the courts of New York in 1844. Subsequently the husband in judicial separation moved to Wisconsin, where the wife, having found him, brought an action in equity in the United States District Court for the District of Wisconsin to recover the amount of the payments in arrears, and judgment was rendered in favor of her contention. The controversy waged in the Supreme Court of the United States concerned the question of jurisdiction, and the somewhat extended opinion rendered deals with the various aspects of that question, which the majority opinion stated to be, " whether a wife divorced *a mensa et thoro* may not have a domiciliation in a State of this Union different from that of her husband in another State, to enable her to sue him there by her next friend, in equity, in a court of the United States, to carry into judgment a decree which has been made against him for alimony by a court having jurisdiction of the parties and the subject-matter of divorce." p. 588. As incidental to the discussion of one of the subordinate phases of this general question, the character and effect of the New York decree and its extra-territorial value were touched upon, and the statement made that such orders constituted judgments of record and created debts of record enforcible against the husband by execution or attachment against his person issuing from the court which gave it, and that actions might be brought in the courts of other

jurisdictions to carry them into judgment and effect. The judgment of the lower court was affirmed.

It is to be noticed that this statement of the court embodies two propositions, to wit: one as to the local character and effect of the New York decree in question, and the other as to the consequent extra-territorial value of it, and that the second of the propositions is plainly predicated upon the first. Therein lies the gist of the decision in respect to the subject now under discussion; for while the language employed is general in its terms, it manifestly was used of such orders and decrees, absolute in their adjudication, conclusive in their character, and enforcible by ordinary legal processes, as was that then under consideration, and as manifestly was not used of every conceivable order and decree relating to future alimony or maintenance. No question was made as to the conclusive character in New York of the decree in question, as establishing there a debt of record. No discussion upon that point appears in the opinion, and no intimation was made as to what the court would have held had the decree been one of a different character. The absence of any such question or discussion, and the unqualified assertion of the first proposition referred to, that is, that the question presented for decision arose upon a conclusive judgment of record enforcible by execution issuing from the court of its origin, is explained when the statutes and decisions of New York are examined and it is found that the assertion was well founded as respects a decree passed in 1844, and for that matter at any time during the next half century.

The courts of New York have no authority in matters of divorce, separation, alimony, etc., save that which is conferred by statute. *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Walker* v. *Walker*, 155 N. Y. 77, 49 N. E. 663; *Livingston* v. *Livingston*, 173 N. Y. 377, 66 N. E. 123. From 1730 to 1894 no authority was conferred upon the New York courts to modify a decree in separation proceedings directing the payment of alimony or an allowance for future maintenance. Once fixed it remained fixed, except that

the decree of separation could be revoked upon the joint application of the parties and the production of satisfactory proof of reconcilation. New York Code of Civil Procedure (II), § 1767; *Goodsell* v. *Goodsell*, 82 App. Div. (N. Y.) 65, 68, 81 N. Y. Supp. 806; *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Walker* v. *Walker*, 155 N. Y. 77, 80, 49 N. E. 663. Under such a decree the amount allowed became a vested property right. *Livingston* v. *Livingston*, 173 N. Y. 377, 66 N. E. 123. In 1894 and 1895 the legislation which was in force when the present decree was passed, and concerning the effect of which the adjudications hereinbefore referred to have been made, supplanted that which had previously been upon the statute books. In 1900 an Act was passed expressly making this new legislation, with its reservations of the power of modification or annulment at any time, applicable to decrees granted prior to 1894. This Act was declared unconstitutional and ineffective as impairing vested rights. *Livingston* v. *Livingston*, 173 N. Y. 377, 66 N. E. 123. Allowances of future alimony made prior to 1894 created a judicial debt of record and furnished a proper basis for recovery in another action. *Wetmore* v. *Wetmore*, 149 N. Y. 520, 44 N. E. 169; *Moore* v. *Moore*, 40 Misc. (N. Y.) 162, 81 N. Y. Supp. 729; *France* v. *France*, 79 App. Div. (N. Y.) 291, 295, 79 N. Y. Supp. 579.

The opinion in the *Barber* case, after observing that the New York court which granted the decree had the power to enforce it by the issuance of execution, proceeded to express its conclusion as to the extra-territorial value of the decree, by saying that when local enforcement could not be had by reason of the husband's departure from the jurisdiction, action could be brought on behalf of the wife in other jurisdictions to carry the decree into judgment there *with the same effect that it had in the State in which the decree was given.* p. 595. The last part of the statement has been commented upon as affirming the extraterritorial operation of special collateral remedies, and as therefore antagonistic to those portions of the opinion in

the *Lynde* case which touch upon that subject. It is perfectly apparent, however, that the court was speaking of decrees which created fixed debts enforcible by the ordinary judicial processes, and that its language was used only to emphasize the fulness of the faith and credit which would be given to such a decree.

It thus appears that while the *Barber* case is authority for the proposition that a decree directing periodical payments by a husband to a wife living in separation, by way of future alimony or maintenance, if it is conclusive in its character and creates a fixed obligation to pay a certain sum of money which will, within the home jurisdiction, be regarded as a debt of record enforcible by execution issuing from the court which granted it, is one to which extraterritorial effect will be given, it is not authority for the doctrine frequently attributed to it, that all orders or decrees for future alimony regardless of their character will be given such effect. The *Lynde* case, on the other hand, is authority for the proposition that a decree for the payment of future alimony or maintenance which is inconclusive in its character by reason of the reservation to the court which made it of the unrestricted right to change or annul it at discretion, and which is not enforcible in the State of its origin otherwise than by special processes exclusive of execution, and of judgment thereon and execution, is not one creating such a debt of record as will entitle it to or justify extra-territorial enforcement. It is not, as has sometimes been assumed, authority for the larger proposition that no decree for future alimony or maintenance, whatever its character, can claim or have enforcement in another State.

The two cases may therefore well stand together as declarative, as far as they go, of authoritative Federal principles. It is quite conceivable that there lies between them no little debatable ground. It is quite possible that the limits to which the doctrine of the *Lynde* case ought to be carried are not clearly determined. But whatever questions of that kind might be suggested, we are not

here concerned with them, since it is apparent that the facts of the present case fill out the full measure of the conditions presented in the *Lynde* case and bring it within the application of the doctrine there laid down.   Our conclusion must therefore be controlled by that decision and be adverse to the plaintiff's right to recover.

There is error; the judgment is reversed and the cause remanded for the rendition of judgment in favor of the defendant.

In this opinion the other judges concurred.